**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EDWARD NOVOTNY, | ) | |
| | ) | Case No. 25 C 6497 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Gabriel A. Fuentes |
| | ) | |
| HYDRAFORCE, INC.[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this matter before the magistrate judge on consent (D.E. 37), Plaintiff Edward Novotny ("Novotny" or "Plaintiff") sued his former employer, Defendant HydraForce Inc. ("HydraForce" or "Defendant"), alleging race-based discrimination in violation of Title VII of The Civil Rights Act of 1964, as well as interference with his rights under the Family and Medical Leave Act ("FMLA").[2] (D.E. 19; "Am. Complaint".) Before the Court are Defendant's Motion for Summary Judgment and Memorandum of Law (D.E. 47-49; "Defendant's Motion") and Plaintiff's Motion for Summary Judgment and Memorandum of Law. (D.E. 51-52; "Plaintiff's Motion".) The cross motions are now fully briefed, and the Court will consider both motions at once.

In Part I below, the Court reviews the legal standards applicable to the cross motions. Part II explains why Plaintiff's summary judgment motion contains procedural deficiencies. Part III examines the facts in this case, both the undisputed and disputed facts. In Part IV, the Court

[1] The Court identifies Defendant by the corporate name it has maintained is its correct name, HydraForce, Inc. In its earlier motion to dismiss, Defendant states that it was incorrectly named in the case caption as "HydraForce Bosch Rexroth." (D.E. 9.)

[2] The Court dismissed Plaintiff's other claims with prejudice, and thus these are the only two remaining claims. (D.E. 27.)

analyzes the parties' legal arguments and explains its conclusion that Plaintiff's Motion fails on the merits, and Defendant's Motion establishes that Plaintiff has raised no genuine issue of material fact.

## I. Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In applying this standard, we construe all facts and draw all reasonable inferences in favor of the non-movant." *Upchurch v. Indiana*, 146 F.4th 579, 585-86 (7th Cir. 2025). To succeed on a summary judgment motion, the movant must "either point out that an essential element of [the nonmovant's] claim lacked evidence or present evidence of its own that negated an essential element of [his] claim." *Ellison v. United States Postal Serv.*, 84 F.4th 750, 759 (7th Cir. 2023). "If the moving party takes the former approach, the non-moving party must respond by offering evidence that would allow a reasonable trier of fact to find in that party's favor on the issue." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (internal citations and quotations omitted). The burden on the nonmovant is not onerous:

> The nonmovant need not depose his own witnesses or produce evidence in a form that would be admissible at trial, but he must go beyond the pleadings (e.g., produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in his favor. Moreover, the non-movant need not match the movant witness for witness, nor persuade the court that his case is convincing; he need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact.

*Burton v. Kohn L. Firm, S.C.*, 934 F.3d 572, 579 (7th Cir. 2019). The Court "must view evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hanson v. Fincantieri Marine Group*, 763 F.3d 832, 836 (7th Cir. 2014). But "generalized and unsupported allegations cannot create a genuine dispute

precluding summary judgment," *Mitchell v. Exxon Mobil Corp.*, 143 F.4th 800, 808 (7th Cir. 2025) (internal citations and quotations omitted), and "[i]t is not [the] job ... of the district court ... to scour the record in search of a genuine issue of triable fact." *Li v. Fresenius Kabi USA, LLC*, 110 F.4th 988, 996 (7th Cir. 2024) (internal citations and quotations omitted).

## II. Plaintiff's Summary Judgment Motion Contains Procedural Deficiencies.

Courts have discretion to "require strict compliance with their local rules," and the Seventh Circuit "give[s] a district court's interpretation of its local rules considerable weight." *Rongere v. City of Rockford*, 99 F.4th 1095, 1100-01 (7th Cir. 2024). After reviewing both parties' submissions for compliance with the local rules, the Court notes that there are several irregularities in Plaintiff's submissions. The Court appreciates that Plaintiff is a pro se litigant, but the federal rules apply to all litigants, and Plaintiff's pro se status does not excuse him from complying with those rules. In *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006), the court required that the pro se litigant comply with local rules, including by citing the record for each material fact that is presented, and avoiding irrelevant information and conjecture. The court in *Cady* affirmed the district court's exercise of its discretion, when determining whether to grant summary judgment, by crediting only defendant's statement of material facts, and disregarding the pro se plaintiff's statement of material facts because the latter "failed to adequately cite to the record" or provide any proof to support the plaintiff's statements, and contained other irrelevant facts, legal arguments, and irregularities. *Id* at 1060-61. Here, the Court will address three primary irregularities before proceeding with a recitation of the material facts and an analysis of the merits of the Motions.

First, both parties filed motions for summary judgment, with a supporting memorandum of law. (D.E. 47, 48, 51, 52.) However, although Plaintiff's memorandum of law includes a section titled "Statement Of The Facts," the section does not "cite directly to specific paragraphs" in the

Local Rule 56.1 statements or responses, as the Local Rule requires. L.R. 56.1(g). Further, Plaintiff failed to submit a Rule 56.1 Statement of Facts "that complies with LR 56.1(d) and that attaches the cited evidentiary material." L.R. 56.1(a)(2). Plaintiff was required to point to evidence, such as affidavits, depositions, answers to interrogatories, or admissions on file, in support of all the facts he asserted, and he did so for none of those in his Memorandum of Law. (D.E. 51.) To the extent Plaintiff's facts are unsupported and out of compliance with L.R. 56.1, the Court has sufficient grounds to strike or disregard those facts. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) ("we have ... consistently and repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1") (citing *Bordelon v. Chi. School Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000)). But in the interest of giving the pro se Plaintiff the benefit of the doubt, the Court has considered Plaintiff's contentions as to disputed material facts, against the backdrop of the full record and Defendant's factual assertions in its motion papers.

After both parties filed motions for summary judgment, responses to those dispositive motions were due on July 21, 2026. (D.E. 44.) On August 12, 2026, with no Plaintiff's response on file, and after the Court *sua sponte* granted the pro se Plaintiff a one-week extension as a courtesy, Plaintiff submitted a document styled as a Local 56.1 response to Defendant's Motion but did not submit any other response in opposition to Defendant's motion. (D.E. 57.) The local rules require each party opposing a summary judgment motion to serve and file a "supporting memorandum of law that complies with LR 56.1(g)," *see* L.R. 56.1(b)(1), but Plaintiff failed to do so. Instead, Plaintiff filed just one document in which he responded, without support from the record, to each of the facts that Defendant alleged in Defendant's Statement of Undisputed Material Facts (D.E. 49). Because Plaintiff does not present legal arguments in opposition to Defendant's motion for summary judgment, Plaintiff does not meet his obligation under L.R. 56.1(b)(1), and

the Court is limited in its ability to consider Plaintiff's opposition to Defendant's motion. "[W]hen a party in a civil case exercises judgment by advancing certain arguments at the expense of others in the district court, he waives the arguments not raised." *Crothersville Lighthouse Tabernacle Church, Inc. v. Church Mut. Ins. Co.*, 168 F.4th 483, 491 (7th Cir. 2026). Further, the Court may treat as undisputed those facts to which Plaintiff did not properly respond, and Plaintiff's responses must not "set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made" nor "assert legal arguments except to make an objection." L.R. 56.1(e)(2)-(3).

Third, the Court ordered reply briefs due on August 20, 2026, including Plaintiff's reply to Defendant's response brief. (D.E. 56.) On August 20, 2026, Plaintiff did not file a reply brief but instead filed another motion for summary judgment and a memorandum in support of his motion. (D.E. 63-64.) That second motion is largely duplicative of Plaintiff's first motion and is denied therefore as moot. To ensure full consideration of Plaintiff's arguments on the first motion, the Court in its discretion will nonetheless construe the second motion as a reply submission in support of the merits of the first motion, even as the pro se Plaintiff did not style it as such. That said, the second motion added little if anything to Plaintiff's position on the first motion (D.E. 52).

Despite the first motion's noncompliance with Local Rule 56.1, the Court will exercise its discretion against striking Plaintiff's statement of facts and will consider Plaintiff's Motion on the merits, on account of Plaintiff's pro se status. *See Otis v. Demarasse*, 886 F.3d 639, 644 (7th Cir. 2018) ("The Supreme Court has cautioned that any document filed *pro se* is to be liberally construed. We therefore have long recognized that *pro se* litigants must be afforded leniency on procedural matters") (internal citations and quotations omitted). Nevertheless, after reviewing

Plaintiff's Motion on the merits, the Court denies Plaintiff's Motion for Summary Judgment and grants Defendant's Motion for Summary Judgment for the reasons stated below.

## III. Plaintiff's Summary Judgment Motion Fails on the Merits, and Defendant's Summary Judgment Establishes that Plaintiff Has Presented No Genuine Issue of Material Fact.

The Court will now delve into the merits, or lack thereof, of the respective summary judgment motions, in which the respective relief and rulings sought are mirror images of each other. First, the Court will outline the material facts that are not in dispute. Second, the Court will delineate the facts that are disputed by the parties. Third, the Court will examine the arguments related to Plaintiff's claim for discrimination and decide whether Plaintiff or Defendant prevails on their respective summary judgment motions as they relate to this claim. Finally, fourth, the Court will assess the arguments related to Plaintiff's claim of FMLA interference and determine whether Plaintiff or Defendant succeeds in their respective motions.

### A. The Following Material Facts Are Not Disputed in This Case.

Starting with the undisputed facts from the Local Rule 56.1 submissions (including Plaintiff's deficient submission), Plaintiff repeatedly states that he disputes a fact, but without actually disputing it because his assertion is unsupported by any citation to any part of the discovery record. The Court treats facts as undisputed where Plaintiff does not actually dispute them with evidence. L.R. 56.1(e)(3).The undisputed material facts are as follows:

Beginning on March 28, 2022, Plaintiff was employed at will by Defendant. (D.E. 49 ¶ 7; D.E. 57 ¶ 6.) Prior to starting work, Plaintiff toured HydraForce's facility in Lincolnwood, Ill., with HydraForce's Senior Recruiter Edwin Mendoza ("Mendoza"), and Plaintiff claims that during the tour, he indicated his interest in the assembler position, which he saw as a good fit given his pre-existing knee injury. (D.E. 49 ¶¶ 3,4; D.E. 57 ¶ 3). Plaintiff received an offer letter, signed by Mendoza, which stated that he was being offered the position of "Part-Time (under 30 hours per

week) Valve Assembler." (D.E. 57, Exhibit C.) When he arrived for his first day of work, Plaintiff met Teresa Velasco ("Velasco"), a supervisor in Defendant's Assembly Department, who assigned him to the Parts Prep Worker I position, rather than the assembler position. (D.E. 49 ¶¶ 9, 12; D.E. 57 ¶¶ 9, 12.) The Parts Prep Worker I position is a different role than assembler, but within HydraForce's Assembly Department. (D.E. 49 ¶¶ 2, 26; D.E. 57 ¶ 28.) Defendant claims that Velasco assigned Plaintiff to the Parts Prep Worker 1 position because "HydraForce has a practice of avoiding staffing part-time employees as assemblers because it could cause disruption to the assembly line workflow." (D.E. 49 ¶ 11.) Plaintiff worked part time in that role, from 4 to 9 p.m., Monday through Friday. (*Id.* ¶ 8; D.E. 57 ¶ 8.) After Plaintiff started working, HydraForce admits that it placed three Hispanic women in the assembler position, but that they were full-time employees with previous experience at the company. (D.E. 49 ¶ 61; D.E. 53 at 9.)

On May 19, 2023, after more than a year working as a part-time Parts Prep Worker I, Plaintiff stopped showing up to work. (D.E. 49 ¶ 31; D.E. 57 ¶ 31.) HydraForce's attendance policy treats employees who fail to report to work for three consecutive days without notice as having voluntarily abandoned their job. (D.E. 49 ¶ 30; D.E. 57 ¶ 30.) Plaintiff contacted Velasco to report his absences, either through a phone call or voicemail stating something to the effect of "Theresa, it's Edward Novotny. I'm sorry. I'm not feeling well. I won't be able to come in to work today." (D.E. 49 ¶ 32; D.E. 57 ¶ 32.) On June 3, HR Business Partner Yadira Rivera ("Rivera") called Plaintiff, reached him, and warned him that without medical documentation, his absences could result in his being terminated for violating the attendance policy. (D.E. 49 ¶ 35; D.E. 57 ¶ 35.)[3] Plaintiff did not return to work on June 7, 2023, despite Defendant's expectation that he would.

[3] Although Plaintiff avers that he disputes this fact, he does not dispute the fact itself but instead offers additional context that "Plaintiff stated that he was injured on the job and should be under Work Comp," without any record citation.

(D.E. 49 ¶ 37; D.E. 57 ¶ 37.) Plaintiff contends that he expressed that he was injured on the job and requested workers' compensation, which he says Rivera ignored. (D.E. 57 ¶¶ 35, 41.)

On June 12, 2023, Rivera called Plaintiff again and said that she was mailing FMLA paperwork to Plaintiff, with the goal of encouraging him to submit medical documentation to support his absences so that they could be excused. (D.E. 49 ¶¶ 38, 41; D.E. 57 ¶¶ 38, 41.) Rivera did not check Plaintiff's FMLA eligibility before mailing him the paperwork. (D.E. 49 ¶ 40; D.E. 57 ¶ 40.) On June 27, Rivera called Plaintiff, as she had not received Plaintiff's completed FMLA paperwork, to inquire about whether Plaintiff planned to submit it. (D.E. 49 ¶ 42; D.E. 57 ¶ 42.) Plaintiff informed Rivera that he never received it, so Rivera says she mailed the documents to Plaintiff that day. (*Id.*)

On July 11, 2023, having not heard from Plaintiff nor received completed FMLA paperwork from him, Rivera called Plaintiff, who stated he had not received the paperwork. (D.E. 49 ¶ 44; D.E. 57 ¶ 44.) The parties agree that after the call, Plaintiff never came to pick up the FMLA paperwork. (D.E. 49 ¶ 47; D.E. 57 ¶ 47.) On July 15, Plaintiff attended a doctors' appointment for his knee but did not submit any documentation to HydraForce related to the appointment. (D.E. 49 ¶¶ 53-54; D.E. 57 ¶¶ 53-54.)[4]

On July 27, 2023, after Plaintiff had been continuously absent for 46 workdays from May 19 through July 26, 2023, HydraForce terminated Plaintiff for job abandonment, and for failing to provide any medical documentation to support his absences from work. (D.E. 49 ¶ 55; D.E. 57 ¶ 55.) Defendant avers that in the 12-month period before May 19, 2023, the day his extended

[4] Although Plaintiff asserts that the fact is in dispute, he does not dispute the fact but offers, without supporting evidence, that he "was never told to request a doctor's note and to return the note to HydraForce" and reiterates that he "should have been placed on Work Comp." (D.E. 57 ¶¶ 53-54.) Thus, the Court treats these facts – that Plaintiff attended a doctors' appointment and never submitted documentation to HydraForce – as undisputed.

absence began, Plaintiff worked 1,084.83 hours. (D.E. 49 ¶ 39.) Although in Plaintiff's amended complaint he states that he "worked at least 1,250 hours," he does not dispute Defendant's assertion about hours worked in the 12-month period before his extended absence but instead offers, unhelpfully, that his hours worked "does not matter because it has no legal impact on the final outcome of the case." (D.E. 57 ¶ 39.)

During Plaintiff's employment, he never witnessed Velasco making comments about race or using discriminatory language about white people, and he never reported any incidents of racial discrimination or harassment. (D.E. 49 ¶¶ 24, 65; D.E. 57 ¶¶ 24, 65.)[5]

Plaintiff now alleges that Velasco treated Hispanic women more favorably, by assigning "eight to eleven unnamed Hispanic women the Assembler 1 position after purportedly claiming the position was unavailable to Plaintiff," which was based on Plaintiff's "personal observations that Hispanic women were working as assemblers." (D.E. 49 ¶¶ 59-60; D.E. 57 ¶¶ 59-60.) Plaintiff also alleges that Defendant treated colleague Lee Velasco, Teresa Velasco's son, who worked as a Parts Prep Worker 1, more favorably, although he had a different supervisor than Plaintiff. (D.E. 51 at 4; D.E. 54 at 16.)[6]

**B. The Following Facts Are Disputed in This Case.**

Plaintiff manages to establish a genuine dispute as to a few facts, none of which is material to Plaintiff's claims, as set forth below. The following brief discussion of these immaterial disputes

[5] As to the factual assertions in this paragraph, Plaintiff "objects" to Defendant's contentions, calling the assertions "hearsay" and stating that "Plaintiff does not know what she said especially when the Plaintiff was not around." (D.E. 57 ¶ 65.) But Plaintiff does not dispute these facts, and the Court views them as undisputed.

[6] Although Plaintiff claims in his Amended Complaint that Lee Velasco has the same supervisor as Plainiff does, Plaintiff provides no evidence for his assertion; at the same time, Defendant offers support for the fact that Lee Velasco had a different supervisor than Plaintiff. The Court will therefore consider it undisputed that the two employees had different supervisors.

is included to provide Plaintiff with a complete explanation of why he is not prevailing on summary judgment.

- Around the time that Plaintiff started working at HydraForce, Plaintiff alleges that he complained to Velasco, his direct supervisor, about his assignment because he was worried that it would aggravate a pre-existing knee injury, and that Velasco replied that there were no assembler jobs available for him. (*Id.* ¶ 13; D.E. 57 ¶ 13.) Velasco, though, denies that Plaintiff ever raised the issue or asked to be transferred, denies that she was aware of his pre-existing knee injury, and denies that she ever told Plaintiff that there were no open assembler positions. (D.E. 49 ¶¶ 14, 15.)

- Although Plaintiff claims that the Parts Prep Worker 1 position was the most physically demanding job in the department, involving "everything [he] wanted to avoid," and exacerbated his knee injury, Defendant avers that it is generally the least physically demanding job in the Assembly Department. (*Id.* ¶¶ 19, 67; D.E. 57 ¶¶ 19, 67.)

- On July 11, 2023, during the period when Plaintiff was absent for many consecutive days, Rivera called Plaintiff. According to Defendant, Plaintiff told Rivera that he would pick up the paperwork in person at HydraForce's facility. (*Id.* ¶ 45.) However, Plaintiff states that he never agreed to pick up the paperwork, and that he was too injured to leave the house. (D.E. 57 ¶¶ 45, 46.)

The foregoing factual disputes are not material, as none of them bears upon whether HydraForce engaged in racial discrimination based on Plaintiff being white, or whether HydraForce interfered with his FMLA rights. Further detail on the overall lack of materiality as to these disputed facts is set forth in Part IV below.

## IV. Analysis of Legal Arguments

The Court has reviewed all the filings from both parties. In considering the respective summary judgment motions, the Court will address together both Plaintiff's Motion and Defendant's Motion, first as they relate to Plaintiff's claim of discrimination based on race, and second as they relate to Plaintiff's claim of FMLA interference.

### A. Plaintiff Can Establish No Genuine Issue of Material Fact on His Title VII Race Discrimination Claim.

Plaintiff, a white man, alleges that HydraForce discriminated against him based on his race under Title VII. More specifically, Plaintiff claims that he was assigned to the Parts Prep Worker 1 position, instead of the assembler position, because he is white, ultimately leading to his termination, and that he was treated more favorably than roughly 10 Hispanic women who were in assembler positions and a Hispanic man, Lee Velasco. (D.E. 19 at 12; D.E. 51 at 1-4; D.E. 57 ¶¶ 59-60.) The Court construes this claim as encompassing two related allegations of racial discrimination: that Plaintiff was reassigned because of his race and that he was fired because of his race.

In the Seventh Circuit, courts evaluate Title VII racial discrimination claims under both the burden shifting *McDonnell Douglas* framework and the *Ortiz* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Ortiz v. Werner Enters., Inc.,* 834 F.3d 760, 765 (7th Cir. 2016); *Gamble v. Cnty. of Cook,* 106 F.4th 622, 625-26 (7th Cir. 2024).

Under the *McDonnell Douglas* burden-shifting framework, to survive summary judgment on claims of racial discrimination under Title VII:

> First, the plaintiff must make out a prima facie case of employment discrimination by showing he: (1) belongs to a protected class, (2) met the defendant's legitimate expectations, (3) suffered an adverse employment action, and (4) was treated less favorably than similarly situated employees who were not members of his protected class. Second, if the plaintiff satisfies each element, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Finally, the burden then shifts back to the employee to show why the employer's explanation is pretextual.

*Saud v. DePaul Univ.,* 154 F.4th 563, 567-68 (7th Cir. 2025), internal citations and quotations omitted.

The Court will assess whether Plaintiff made out a prima facie case for each allegation of racial discrimination, starting with Plaintiff's assertion that he was reassigned because of his race. As to the first element, the notion that Plaintiff belongs to a protected class is not contested. Similarly, as to the second element, Defendant does not contest whether Plaintiff met the defendant's legitimate expectations when he was reassigned to the Parts Prep Worker 1 role on the first day of work; there was no way Plaintiff could have failed to meet the Defendant's legitimate expectations at that point because he had not started work yet. The Court will therefore focus its analysis on the third and fourth elements, both of which Plaintiff must show are in genuine dispute to survive Defendant's motion for summary judgment: whether Plaintiff suffered an adverse employment action by being assigned to the Parts Prep Worker 1 position and whether he was treated less favorably than similarly situated employees who were not members of his protected class.

After reviewing the summary judgment record, the Court finds that Plaintiff does not present a prima facie case of discrimination under the *McDonnell Douglas* test because as to the fourth element, Plaintiff offers no evidence from which a reasonable factfinder could conclude that similarly situated employees who were not members of his protected class were treated more favorably than he was.[7] For a colleague to be similarly situated, both the Plaintiff and the comparator "need not be identical in every conceivable way," but they must have the same supervisor, and the Plaintiff must show that the comparator was "directly comparable to [him] in all material respects" so as to "eliminate other possible explanatory variables." *See Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012); *Downing v. Abbott Laboratories*, 48 F.4th 793, 805

[7] Because Plaintiff provides no similarly situated employees, he cannot make a prima facie case of discrimination, and the dispute over whether Plaintiff complained to Velasco about the Parts Prep Worker 1 position is immaterial as to whether Plaintiff was reassigned because of his race.

(7th Cir. 2022). Here, the Plaintiff points to between eight and 11 unnamed Hispanic women that he says are similarly situated but unlike him were assigned to the Assembler 1 role. (D.E. 49 ¶¶ 59-60; D.E. 57 ¶¶ 59-60.) Defendant admits that there were at least three Hispanic women that were assigned to the Assembler role while Plaintiff was working as a Parts Prep Worker 1. (D.E. 49 ¶ 61.) But Defendant notes that those Hispanic women, unlike Plaintiff, were full-time employees with previous experience at the company. (*Id.*) Plaintiff offers no evidence to dispute the fact that these Hispanic women were full time, merely his observation that he saw Hispanic women in the assembler role. (D.E. 57 ¶¶ 59-60.) Plaintiff does not point to any part-time employees who were assigned to an Assembler role and does not describe any employees with sufficient particularity to conclude that they are suitable comparators. Plaintiff's inability to present a part-time worker who was assigned to the Assembler role does not generate a material dispute as to Defendant's explanation that Plaintiff was assigned to the Parts Prep Worker role because it has a practice of not assigning part-time employees as assemblers. (D.E. 49 ¶ 11.) Because Plaintiff does not meet his burden of presenting a suitable similarly situated employee, his discrimination claim related to his assignment as a Parts Prep Worker fails under *McDonnell Douglas*, and the Court need not reach a conclusion on whether his reassignment constitutes an adverse action.[8] Nor is the Court required to shift the burden to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.[9]

---

[8] Disputed facts related to this issue, such as the question of which position is more physically demanding, are therefore immaterial.

[9] Nevertheless, Defendant offers its legitimate, non-discriminatory reason for assigning Plaintiff to the Parts Prep Worker 1 position that Plaintiff was a part-time employee and "HydraForce has a practice of avoiding staffing part-time employees as assemblers because it could cause disruption to the assembly line workflow." (D.E. 48 at 11-12.)

As to Plaintiff's claim that he was terminated because of his race, Plaintiff fails to establish a prima facie case of discrimination because by the time Plaintiff was terminated, he was no longer meeting Defendant's legitimate expectations, and, therefore, Plaintiff does not meet the second element required to make a prima facie case of discrimination. Defendant asserts that Plaintiff was terminated because he missed 46 consecutive workdays and failed to submit medical documentation supporting his absences, (D.E. 49 ¶ 55), and these facts are not disputed. Defendant's explanation plainly supports the conclusion that Plaintiff was not meeting his employer's legitimate job expectations. *See Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 854 (7th Cir. 2015) (concluding that failure to return to work justified termination); *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 296 (7th Cir. 1998) (holding that excessive absenteeism is an acceptable ground for termination). Having not disputed the facts showing Plaintiff's extensive and notable absenteeism, Plaintiff cannot generate a material dispute over whether he met Defendant's legitimate expectations.

Moreover, even if Plaintiff had met his employer's expectations, Plaintiff offers no evidence showing similarly situated employees who were treated more favorably. Plaintiff offers Lee Velasco as a potential comparator, but Lee Velasco is not a suitable comparator, as he had a different supervisor. (D.E. 51 at 4; D.E. 54 at 16); *see Coleman*, 667 F.3d at 846; *Jackson v. City of Joliet*, No. 19-CV-7284, 2025 WL 1940386, at *19 (N.D. Ill. July 15, 2025) (granting summary judgment where Plaintiff did not identify a comparator with the same supervisor.)[10]

Moving to the *Ortiz* framework, the Court "must determine whether, considered as a whole, the plaintiff's evidence would permit a reasonable factfinder to conclude that the plaintiff's

[10] Additionally, as to Plaintiff's allegations that because of his race, he was falsely accused of sexual harassment, written up for colleagues' mistakes, passed over for a promotion, followed around by Teresa Velasco, and not given training on the Parts Prep machinery, Plaintiff offers no evidence that these events actually occurred. (D.E. 49 ¶ 66; D.E. 52 at 3; D.E. 54 ¶¶ 14, 16-19; D.E. 55 ¶¶ 28-32.)

protected characteristic 'caused the discharge or other adverse employment action.'" *Lohmeier v. Gottlieb Mem'l Hosp.*, 147 F.4th 817, 826 (7th Cir. 2025), quoting *Ortiz*, 834 F.3d at 765. Under *Ortiz*, Plaintiff can proffer direct or circumstantial evidence of discrimination. *Arnold v. United Airlines, Inc.*, No. 24-2179, 2025 WL 1778643, at *3 (7th Cir. June 27, 2025). Direct evidence of discrimination is based on what an employer said or did as it relates to its employment decision. *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005). Circumstantial evidence supporting an inference of discrimination could include "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Teruggi v. CIT Grp./Cap. Fin., Inc.*, 709 F.3d 654, 659-60 (7th Cir. 2013), quoting *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). Here, even when construing the evidence in a light most favorable to Plaintiff, Plaintiff does not present any direct or circumstantial evidence that would allow a reasonable factfinder to infer that any of the actions taken by Defendant, including assigning Plaintiff to the Parts Prep Worker 1 position or terminating him for job abandonment, were made because of Plaintiff's race. Plaintiff admits that he never heard his supervisor or employer make any statements that were racially insensitive or related to his race. (D.E. 49 ¶ 24, 65; D.E. 57 ¶¶ 24, 65.) Further, Plaintiff does not provide any circumstantial evidence, no examples of suspicious timing, ambiguous statements, or pretextual reasons for any of the actions taken against Plaintiff. Plaintiff merely offers his subjective belief that he was treated differently because of his race, including his observations that Hispanic employees worked as assemblers and were treated better. (D.E. 49 ¶¶ 59-60; D.E. 57 ¶¶ 59-60.) That is not enough for his claims to survive summary judgment, as "speculation is

insufficient to defeat a summary judgment motion." *Flowers v. Kia Motors Finance*, 105 F.4th 939, 946 (7th Cir. 2024). Plaintiff has not offered any evidence on which a reasonable jury could conclude that the events he complains about were based on his race.

Overall, Plaintiff has not met his burden of showing there is a genuine dispute that Plaintiff was fired because of his race, and Defendant has met its burden of demonstrating that there is no genuine issue of material fact as to Plaintiff's discrimination claims. Therefore, Defendant's motion for summary judgment as it relates to Plaintiff's Title VII racial discrimination claim is granted, and Plaintiff's motion for summary judgment as it relates to that claim is denied.

**B. Plaintiff's FMLA Interference Claim Fails on Its Merits, and Defendant Is Entitled to Summary Judgment on That Claim As Well.**

Additionally, Plaintiff alleges that Defendant interfered with his rights under the Family and Medical Leave Act (FMLA). (D.E. 19 at 18-22.) Under the FMLA, Plaintiff has the burden to show the following elements: (1) whether he was eligible for FMLA protection; (2) whether his employer was covered by the FMLA; (3) whether he was entitled to take leave under the FMLA; (4) whether he provided sufficient notice of his intent to take leave; and (5) whether his employer "interfered with, restrained, or denied FMLA benefits to which he was entitled." *Myers v. Sunman-Dearborn Cmty. Schs.*, 142 F.4th 527, 533 (7th Cir. 2025). To be considered an eligible employee under the FMLA, an individual must have been employed by their employer for "at least 12 months" and must have "at least 1,250 hours of service with such employer during the previous 12-month period," with hours of service meaning only those that the employee actually worked. 29 U.S.C. § 2611(2)(A); *see Bailey v. Pregis Innovative Packaging, Inc.*, 600 F.3d 748, 750 (7th Cir. 2010).

First at issue is whether Plaintiff was ever eligible for FMLA protection during his tenure at HydraForce, more specifically, whether he worked enough hours within the previous 12 months

to qualify for FMLA benefits. Defendant alleges that Plaintiff only worked 1,048.83 hours in the year prior to his period of absences, which started on May 19, 2023, citing employers' payroll records. (D.E. 49 ¶ 39.) In his amended complaint, Plaintiff contends, but has not mustered any supporting evidence, that he worked at least 1,250 hours in the 12 months prior to his period of extended absence. (D.E. 19 at 19.) In his memorandum in response to Defendant's undisputed material facts, Plaintiff states that his hours worked "does not matter because it has no legal impact on the final outcome of the case." (D.E. 57 ¶ 39.) But hours worked is a prerequisite for FMLA leave. 29 U.S.C. § 2611(2)(A). The employer records from the period between May 19, 2022, and May 19, 2023, demonstrate that Plaintiff's work time falls short of the 1,250 required to be eligible for FMLA. (D.E. 49 ¶ 39.) Therefore, Plaintiff's FMLA interference claim fails because he did not reach the hours-of-service requirement for FMLA, and the Court need not reach a finding on any of the other elements that Plaintiff has the burden to establish. *See Pirant v. U.S. Postal Serv.*, 542 F.3d 202, 207 (7th Cir. 2008) (upholding district court finding that employee was not eligible for FMLA leave, where hours of service fell short of 1,250). Although Rivera failed to check Plaintiff's eligibility for FMLA leave and Plaintiff never requested FMLA leave, that does not change the fact that Plaintiff was never eligible for FMLA leave in the first place, and therefore, no triable issue can arise over whether Defendant interfered with an FMLA right that Plaintiff cannot establish that he ever had.[11] Accordingly, Defendant's Motion on the FMLA interference claim is granted, and Plaintiff's Motion on the FMLA claim is denied.

**CONCLUSION**

Rule 56 exists because not all federal claims go to trial. If the record presents no triable issue for a jury, the case is ripe for summary judgment, and there can be no trial. Fed. R. Civ. P.

[11] Similarly, the disputed fact of whether Plaintiff said he would come into the HydraForce facility to pick up FMLA paperwork is immaterial because he was never eligible for FMLA leave in the first place.

56. For the foregoing reasons, Plaintiff's Motion (D.E. 52) is denied in full, and Defendant's Motion (D.E. 47) is granted in full.

**SO ORDERED.**

**ENTER:**

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: September 24, 2026**